UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
TONJAH W. GEORGE,

                Plaintiff,

        - against -

NEW YORK CITY DEPARTMENT OF
CORRECTIONS,

                Defendant.
---------------------------------------------------------X

**MEMORANDUM & OPINION**

Case No. 12 CV 2963 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Tonjah George, proceeding *pro se*, asserts claims for employment discrimination by her employer, the New York City Department of Corrections ("DOC" or "Defendant"), under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA") (*See* Dkt. 1, Complaint ("Compl.").) Plaintiff alleges discrimination on the basis of her race, national origin, and disability, as well as retaliation for filing internal complaints of same. (*See* Compl. at 3.)

      Presently before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). On March 31, 2015, the Court granted DOC's motion in its entirety, with a written decision to follow. (Order dated 3/31/2015.) The Court now explains its reasoning.

**I.    BACKGROUND**

    **A.    Local Rule 56.1**

      Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" setting forth material facts as to

which there is no genuine issue to be tried. *See* Local Rule 56.1(a). A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains. *See* Local Rule 56.1(b). The facts set forth in a moving party's statement "will be deemed to be admitted unless controverted" by the opposing party's statement. Local Rule 56.1(c). Defendant DOC submitted the statement required by Local Rule 56.1 to accompany its Memorandum of Law in Support of Defendant's Motion for Summary Judgment. (*See* Dkt. 29–1, Defendant's 56.1 Statement ("Def. 56.1"); Dkt. 29–8, Defendant's Memorandum in Support of Summary Judgment ("Def. Memo.").) Plaintiff submitted an affidavit in response to the motion which rebutted several legal and factual assertions made by Defendant, (*see* Dkt. 29–9, George Affidavit in Opposition to Summary Judgment ("George Aff.")), but lacked a separate statement confirming or rebutting the facts contained in Defendant's 56.1 statement as required by Local Rule 56.1(b).

Generally, a party's failure to respond to the facts set forth in the moving party's Rule 56.1 Statement constitutes an admission of those facts. *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (citations omitted). However, the Court has ample discretion to excuse a party's failure to comply with local rules. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted). Here, the Court finds good cause to excuse Plaintiff's failure to comply with Rule 56.1, and does not deem admitted all of the facts set forth in Defendant's 56.1 Statement. Plaintiff, who is not a lawyer, is representing herself and therefore may be afforded extra latitude by the Court. *See Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("[W]here a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions[.]").

Furthermore, Plaintiff has conducted substantial discovery and has included numerous exhibits in her opposition to Defendant's motion, which are cited in Plaintiff's affidavit. Accordingly, only those facts set forth in Defendant's 56.1 Statement not countered by admissible evidence in the record will be deemed admitted by the Court.

The facts set forth below are largely taken from Defendant's Rule 56.1 Statement. Those disputed by Plaintiff are noted as such; her assertions are taken from her initial complaint (Dkt. 1) and from her Affidavit in Opposition to Defendant's Motion. (*See* George Aff.).

### B. Factual Background

#### 1. Employment History with the DOC and 2004 DOC EEO Complaint

Plaintiff has worked as a Correction Officer with the DOC since February 18, 1988. (Def. 56.1 ¶ 2). On January 1, 2001, Plaintiff began her assignment at the DOC's Queens Detention Center ("QDC"), following the DOC's determination that she was not qualified to carry a gun on the job. (Def. 56.1 ¶ 3.) On September 3, 2001, Plaintiff requested an accommodation due to claimed domestic violence issues, specifically requesting low-stress and limited inmate contact positions. (Def. 56.1 ¶ 5.) On October 25, 2001, the DOC informed her that this level of accommodation was not possible, but that requests related to her domestic violence proceedings would be accommodated whenever possible. (Def. 56.1 ¶ 6.) Specifically, the DOC indicated that it would attempt to accommodate Plaintiff's requests to go to court (in connection with her own domestic violence matters), see her attorney, and attend domestic violence counseling. (Def. 56.1 ¶ 6.) At the time, Plaintiff worked the day shift at QDC, between the hours of 7:00 a.m. and 3:30 p.m. (*See* Dkt. 29–4 at ECF 41.)[1]

---

[1] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

Plaintiff alleges that although this accommodation was ordered by the DOC Equal Employment Opportunity office ("DOC EEO"), her immediate supervisor, Emilio Pennes, did not abide by it. (Def. 56.1 ¶¶ 6–7.) She alleges that Pennes changed her work schedule and repeatedly failed to allow her to attend counseling sessions. (*Id.*; *see also* Compl. at ECF 16.) On or about April 20, 2004, Plaintiff filed a new complaint with the DOC EEO on the basis of these claims. (Def. 56.1 ¶ 7.) On October 4, 2004, the DOC confirmed that Plaintiff would continue to work the day shift. (Def. 56.1 ¶ 8.)

    2.    <u>2009 U.S. EEOC Complaint</u>

Plaintiff took sick leave from December 15, 2008 until January 19, 2009. (Def. 56.1 ¶ 9.) On January 17, 2009, in accordance with DOC regulations, she was evaluated by the DOC's Health Management Division and cleared to return to work under a "Medically Monitored Return" restriction for officers with serious physical/psychological limitations. (Def. 56.1 ¶ 10.)

Plaintiff returned to work at her parent command, QDC, on January 19, 2009. (Def. 56.1 ¶ 11.) On January 23, 2009, Pennes informed her that her work schedule would be changed to the 11:00 PM to 7:30 AM shift (the "midnight tour"), which prompted her to report to another supervisor that she had tripped while exiting an elevator, was having personal issues involving her son, and had experienced an anxiety attack that day. (*See* Def. 56.1 ¶ 12 and Dkt. 29–5 at ECF 29.) Pennes requested a medical evaluation, which resulted in Plaintiff being continued in her medically restricted status. (Dkt. 29–5 at ECF 29.)

On January 27, 2009, Plaintiff visited the Health Management Division for a scheduled appointment, where her medically restricted status was continued. (Def. 56.1 ¶ 15.) At that appointment, the Health Management Division doctor ordered Plaintiff transferred to the Correction Academy, which could more easily accommodate her medical restrictions and lack of

4

authorization to carry a gun. (Def. 56.1 ¶ 16.) Plaintiff objected to the transfer because the Correction Academy resulted in a longer commute. (Dkt. 29–5 at ECF 40.) Though Plaintiff alleged that, in January 2009, her supervisor changed her duty hours to the midnight shift (*id.*), her timesheet for January through April 2009 reflects that she worked the day shift during this period. (*See* Dkt. 29–4 at ECF 41.)

On March 26, 2009, Plaintiff timely filed a claim of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging disparate treatment based on race and disability as a domestic violence victim, as well as retaliation. (Def. 56.1 ¶ 19.) On March 22, 2012, the EEOC issued a dismissal and a right to sue letter. (Def. 56.1 ¶ 20.) On June 12, 2012, Plaintiff timely commenced this action, alleging race discrimination under Title VII, disability discrimination under the ADA, and retaliation for complaints to the DOC EEOand the EEOC (Def. 56.1 ¶ 21; *see generally* Compl.)

## II. SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ("*Liberty Lobby*"). "The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Department*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Liberty Lobby*, 477 U.S. at 249); *see also F.D.I.C. v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). A dispute of fact is

"genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citations omitted); *see also Celotex Corp.*, 477 U.S. at 323. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012). The nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation," *Brown*, 654 F.3d at 358 (quotations and citations omitted); *see also DeFabio v. East Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010); and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008) (citations and quotations omitted). In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

The Second Circuit has provided additional guidance with respect to motions for summary judgment in employment discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims

> in cases lacking genuine issues of material fact," *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997), and "may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller Inc.*, 258 F.3d 62, 69 (2d Cir. 2001); *see Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Lastly, the Court is mindful of its obligation to construe pro se pleadings and submissions "to raise the strongest arguments they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## III. DISCUSSION

The Court construes Plaintiff's Complaint to allege the following claims: (1) a Title VII claim of race discrimination on the basis of a proposed change to her work schedule and a temporary lateral transfer from her assigned workplace; (2) a Title VII claim of retaliation for filing DOC EEO and EEOC complaints; and (3) an ADA claim for failure to accommodate the alleged disability of having suffered domestic violence. (*See generally* Compl.)[2]

The Court first considers the elements of Plaintiff's Title VII race discrimination claim, finding that summary judgment in favor of Defendant is appropriate given Plaintiff's failure to

---

[2] As discussed *infra* in Section III.D, Plaintiff's Complaint notes a claim of national origin discrimination, but fails to allege sufficient facts to substantiate that claim. Furthermore, the record on summary judgment does not reflect a national origin discrimination claim, and so the Court does not construe the Complaint as alleging such a claim.

7

demonstrate that she suffered an adverse employment action. Second, the Court considers Plaintiff's Title VII retaliation claim, finding that her inability to establish a causal connection between her DOC EEO and EEOC complaints and the alleged retaliation by Defendant requires a grant of summary judgment to Defendant on her claim. Third, the Court grants summary judgment to Defendant on Plaintiff's claim of discrimination under the ADA, finding that her status as a victim of domestic violence does not bring her within the protection of the ADA and that, even if the ADA did protect Plaintiff, there is no dispute regarding Defendant's accommodation of her schedule requests. Finally, the Court explains why it does not construe the Complaint as alleging a national origin discrimination claim.

### A. Plaintiff's Title VII Claim Fails for Lack of an Adverse Employment Action

The Court analyzes Plaintiff's Title VII claim using the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Abrams v. Dep't of Public Safety*, 764 F.3d 244, 251 (2d Cir. 2014) (applying the burden-shifting framework to Title VII claims). Under this framework, to defeat a motion for summary judgment, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. A plaintiff establishes a *prima facie* case by showing (1) membership in a protected class; (2) qualification for the job; (3) an adverse employment action; and (4) circumstances surrounding the adverse employment action that give rise to an inference of discrimination. *Id.*; *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (applying the *McDonnell Douglas* factors to a Title VII discrimination claim).

If the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to set forth a legitimate, non-discriminatory justification for its adverse employment action against the plaintiff. *St. Mary's Honor Center v.*

*Hicks*, 509 U.S. 502, 506–07 (1993) ("*Hicks*"). After the defendant comes forward with a non-discriminatory explanation, the "presumption [arising from the *prima facie* case of discrimination], having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *Id.* at 510–11. The plaintiff then must offer evidence that the defendant's purported reason is a mere pretext for unlawful discrimination. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). At this stage, "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false[.]" *Id.* (citing *Van Zant v. KLM Royal Dutch* Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotations omitted)). Although the *McDonnell Douglas* framework shifts the burden of production between plaintiff and defendant, at all times the burden of persuasion rests with the plaintiff to demonstrate discrimination, *Hicks*, 509 U.S. at 518, and the ultimate issue to be determined is "discrimination [or lack thereof]." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

As set forth above, an adverse employment action is an essential element of Plaintiff's *prima facie* case for discrimination based on race. An adverse employment action within the meaning of Title VII is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (citing *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted)). Rather, it is a "materially significant disadvantage with respect to the terms of [the plaintiff's] employment." *Littlejohn v. City of New York*, 795 F.3d 297, 312 n.10 (2d Cir. 2015) (citing *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)). Such changes may include termination, demotion, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices unique to a particular situation. *Feingold*, 366 F.3d at 153 (citing *Galabya*, 202 F.3d at 640).

Flexibility in defining adverse actions notwithstanding, the law is clear that the transfer of an employee from one facility to another does not rise to the level of adverse employment action unless accompanied by one of the above-listed changes, such as demotion in title or reduction in benefits. *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) (citing *Pimentel v. City of New York*, 74 Fed. App'x 146, 148 (2d Cir. 2003)). As a matter of law, a transfer that results in a longer commute is an inconvenience, not an adverse employment action. *Id*. Likewise, "unfavorable schedules or work assignments do not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of Plaintiff's employment." *Id*. (*quoting Lee v. New York State Dept. of Health*, No. 98 CIV 5712, 2001 WL 34031217, at *16 (S.D.N.Y. Apr. 23, 2001)).

Plaintiff premises her Title VII claim on (1) a threatened change in her work schedule and (2) a temporary transfer from her parent command, QDC, to the DOC Correction Academy. (Compl. ¶ 8.) Neither of these actions qualifies as an adverse employment action necessary to establish a *prima facie* case of discrimination. Though Plaintiff's supervisor had informed her that she would be moved to the midnight shift, (Dkt. 29–5 at ECF 29), her timesheet reflects that she did not, in fact, work the midnight shift between January 23, 2009 and April 28, 2009 (Dkt. 29–4 at ECF 41). Even if she had been forced to work the midnight shift, however, Plaintiff does not also claim that the change was accompanied by a reduction in pay, a demotion in title, or some other change that had a material impact on the terms and conditions of her employment. *See Lee*, 2001 WL 34031217, at *16.

For the same reason, Plaintiff cannot rely on her temporary transfer to the Correction Academy to supply the requisite adverse employment action for her *prima facie* case. Though the transfer resulted in some inconvenience to Plaintiff, as the Academy was farther from Plaintiff's home, and the Academy's protocols apparently caused Plaintiff some stress (*see* Compl. ¶ 8 and Dkt. 29–4 at ECF 37), the transfer was essentially a lateral one that did not materially affect her job title, responsibilities, or pay. *See Smalls*, 396 F. Supp. 2d at 371 (finding that the plaintiff's transfer to a different location did not constitute an adverse employment action where the plaintiff retained same position, responsibilities, salary and benefits). Thus, because Plaintiff has failed to carry her burden with respect to her *prima facie* case for Title VII discrimination, the Court grants summary judgment to Defendant on Plaintiff's Title VII claim.

### B. Plaintiff's Retaliation Claim Is Too Attenuated

Like Plaintiff's Title VII race discrimination claim, the Court analyzes Plaintiff's retaliation claim under the *McDonnell Douglas* burden shifting framework. *Abrams*, 764 F.3d at 254 (applying the burden-shifting framework to Title VII retaliation claims). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must generally show that: (1) she engaged in a protected activity [such as filing an EEOC complaint]; (2) her employer was aware of that activity; (3) she suffered a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013).

Plaintiff's retaliation claim fails for lack of a causal connection between her DOC EEO and EEOC complaints and the DOC's alleged actions against her. When analyzing the fourth element of a plaintiff's *prima facie* case for retaliation, courts look initially to the temporal

proximity between the plaintiff's protected activity and the employer's adverse action. *Garrett v. Garden City Hotel, Inc.*, No. 05 CV 0962, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007). To find a causal link, "the temporal proximity between the protected activity and the adverse action must be very close." *Id.* Though the Second Circuit "'has not drawn a bright line, defining, for purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation,'" it has noted that courts typically measure the gap as matter of months, not years. *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012) (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001)); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (finding five months is "not too long" to find the causal relationship).

Here, Plaintiff's two protected actions were her DOC EEO complaint in 2004 and her EEOC charge in March 2009. (*See* Compl. ¶ 8 and Dkt. 29–5 at ECF 40.) The actions that Plaintiff alleges were retaliatory – a temporary transfer and a proposed, but never executed, change in work schedule – occurred in January 2009. (*See* Def. 56.1 ¶ 16 and Dkt. 29–4 at ECF 41.) Clearly, Plaintiff cannot rely on her 2004 DOC EEO complaint as a basis for the "retaliation" that took place in January 2009, over four years later; this separation is much too attenuated. *See Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306 (2d Cir. 2005) (holding that "more than a year" was too much temporal separation to support a claim of retaliation). Nor can Plaintiff rely on her March 2009 EEOC complaint, because the alleged retaliation occurred two months *before* her complaint to the EEOC. Retaliation must be caused by, and subsequent to, the action that allegedly caused it. *See Palummo v. St. Vincent's Med. Ctr.*, 4 F. App'x 99, 102 (2d Cir. 2001) (noting the plaintiff's

retaliation claim under the ADA could only arise after she filed an EEOC charge); *Hartley v. Rubio*, 785 F. Supp. 2d 165, 182–83 (S.D.N.Y. 2011) (finding no causal connection existed to support plaintiff's Title VII retaliation claim where "adverse employment action predated [plaintiff's] filing of a complaint with the EEOC").

Plaintiff's Title VII retaliation claim thus cannot succeed, and the Court grants summary judgment to Defendant on this claim.

## C. Plaintiff Fails to Establish a *Prima Facie* Case of Discrimination under the ADA

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. A disability, for the purposes of the ADA, is a "physical or mental impairment that substantially limits a major life activity." 42 U.S.C. § 12102. A qualified individual "means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111. Thus, an employer may be liable for discrimination in violation of the ADA by failing to reasonably accommodate "'the known physical or mental limitations of an otherwise qualified individual with a disability.'" *McBride v. BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)).

Like Plaintiff's Title VII claims, Plaintiff's ADA claim is subject to the *McDonnell Douglas* burden-shifting framework. *Sista v. CDC Ixis North Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (applying the burden-shifting framework to ADA claims). To establish a *prima facie* case of disability discrimination arising from a failure to accommodate, Plaintiff must show that: (1) she is a person with a disability under the meaning of the ADA; (2) the DOC is covered by

13

the ADA and had notice of her disability; (3) Plaintiff could perform the essential functions of her job with reasonable accommodation; and (4) the DOC failed to make such accommodations. *See id.* (citing *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006)).

The Court finds that Plaintiff's ADA claim cannot succeed because she fails to establish that she is disabled within the meaning of the ADA. Plaintiff claims that her status as a victim of domestic violence, *per se*, merits protection under the ADA. However, no court within the Second Circuit has found that one's status as a domestic violence victim constitutes a "physical or mental impairment that substantially limits a major life activity" under the ADA. 42 U.S.C.A. § 12111.[3] To be sure, many of the physical and mental challenges faced by people who have suffered domestic violence may qualify, in themselves, as disabilities under the ADA. But having suffered domestic violence does not alone form a sufficient basis for a claim of disability under the ADA. Plaintiff therefore fails to establish a crucial element of a *prima facie* case of disability discrimination.

Even if Plaintiff were able to show that she had a disability covered by the ADA, Plaintiff's ADA claim fails for a second reason. Both parties acknowledge that Plaintiff officially received a "reasonable accommodation" in the form of efforts to allow her to go to court in connection with her own domestic violence matters and attend counseling sessions related to her domestic violence issues. (Dkt. 29–4 at ECF 35.) Plaintiff's Complaint alleges that her supervisor, Pennes, failed to implement these accommodations, instead rescheduling her

---

[3] Plaintiff's Exhibit 7A includes an excerpt explaining the New York City Human Rights Law ("NYCHRL"), which makes it illegal to discriminate against an employee because of their status as a victim of domestic violence. (Dkt. 29–9 at ECF 25.) Plaintiff's Complaint, however, does not include a claim under the NYCHRL and the Court does not construe Plaintiff's Complaint to allege such a claim, because it only contains federal claims. (*See* Compl.) Even if the Court were to construe Plaintiff as alleging a NYCHRL violation, it would decline to exercise supplemental jurisdiction over it, given the dismissal of Plaintiff's federal claims.

to the "midnight tour", which was compatible with her court and counseling needs. (Compl. ¶ 8.) However, as the Court determined above, this threatened schedule change never took effect. (*See* Dkt. 29–4 at ECF 41.) Without a showing that Plaintiff was forced to work a schedule that was contrary to the official accommodation granted by the DOC EEO office, Plaintiff's claim of disability discrimination cannot succeed. The Court thus grants summary judgment to Defendant on Plaintiff's ADA claim.

### D. Plaintiff Fails To Allege Facts To Support A National Origin Discrimination Claim

Defendant construes Plaintiff's Complaint as asserting a Title VII claim on the basis of national origin, and urges the Court to dismiss the claim for failure to exhaust administrative remedies because Plaintiff did not include a national origin claim in her 2009 EEOC complaint. (Def. Memo at ECF at 4). The Court does not construe Plaintiff's Complaint as asserting such a claim.

Plaintiff used a standardized form complaint when filing this action. (Compl.) In the section of the form listing the "discriminatory conduct of which I complain in this action," Plaintiff put check marks next to "Failure to accommodate my disability" and "Retaliation." (Compl., ¶ 4.) In the same section, next to "Other Acts (specify)", Plaintiff wrote in "Discrimination – national origin, race," but did not place a check mark next to "Other Acts." (*Id.*) In the lower part of the page, where Plaintiff was to specify the basis upon which she had been treated in a discriminatory manner, Plaintiff checked "race" (and wrote in "African American") and "disability" (and wrote in "domestic violence victim"), but did not place a check mark next to "national origin." (*Id.* at ¶ 7.) On the next page, in the narrative portion of the form where Plaintiff described the "facts of [her] case," Plaintiff did not specify any form of national origin discrimination. (*Id.* at ¶ 8.) Nor did Plaintiff include any description of national origin

15

discrimination in her affidavit or her exhibits; indeed, Plaintiff's papers do not ever specify what her national origin is.

In light of these circumstances, the Court finds that Plaintiff has not asserted a claim for national origin discrimination. Even if the Court could construe Plaintiff's notation of "national origin" as a basis for stating such a claim, the Court would be compelled to dismiss it for failure to state a claim due to the absence of any factual allegations in the record regarding Plaintiff's national origin or any discrimination resulting therefrom. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). *Chylinski v. Martin Rosol's Inc.*, No. 08 CV1231, 2010 WL 2794198, at *3 (D. Conn. June 23, 2010) *report and recommendation adopted*, 2010 WL 2794101 (D. Conn. July 14, 2010) (dismissing plaintiff's national origin and retaliation claims based on plaintiff's failure to allege "even the barest allegations as to what happened").[4]

---

[4] The more plausible inference to be drawn from Plaintiff's "national origin" notation is that, not unreasonably, she interpreted her status as an "African-American" to reference or encompass national origin, as opposed to being a racial designation.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted. Plaintiff's Complaint is dismissed with prejudice.

SO ORDERED:

    */s/ Pamela K. Chen*
PAMELA K. CHEN
United States District Judge

Dated: September 22, 2015
       Brooklyn, New York